(Krause *v.* Beitel and another.)

---

[PHILADELPHIA, APRIL 2, 1831.]

## KRAUSE assignee of MOLL *against* BEITEL and another.

### IN ERROR.

Testator, after giving certain portions of his real estate to certain of his children at a valuation, and declaring, that in case it was refused by all his children, it should be sold by his executors, and that all his estate or the value thereof should be equally divided among his ten children, naming his seven sons and three daughters, all three of which daughters were married women, proceeded, "and if one or the other of my children should depart this life, then his bequest or legacy shall come to the heirs of his body." *Held,* that the bequest to the daughters was not to their separate use, but passed to their respective husbands.

The interest of a trustee of an insolvent debtor, in the debts of the insolvent, is exactly that of the insolvent himself, as they stood affected by countervailing equities, at the time of the assignment.

Where, therefore, a trustee brought suit against two administrators with the will annexed, to recover a legacy given to the insolvent's wife, it was *held* to be a good defence, that one of the defendants had actually paid a debt for the insolvent before his discharge, and had been sued for another debt, which he had since been compelled to pay.

WRIT of error to the Court of Common Pleas of *Lehigh* county.
In this action of *assumpsit,* in which the plaintiff in error, *John J.*

*Krause,* assignee of *John Moll,* for the use of the creditors of the said *John Moll,* was plaintiff below, and the defendants in error, *Christian F. Beitel* and *Frederick Newhardt,* were defendants, a case was stated for the opinion of the court below, which it was agreed should be considered as a special verdict. In substance it was as follows:

*Lorentz Newhardt,* on the 28th of *December,* 1815, made his will, which after his death, *viz.* on the 8th of *August,* 1817, was duly proved, by which, after devising certain portions of his real estate to certain of his children, and affixing a value to some of those portions, he declared, that if any of his children should refuse to accept the property at the value he had affixed to it, then the eldest son should be entitled to take it, and if he refused the next, and so on to the youngest; and if all the sons refused it, the same right should devolve upon the daughters in succession, according to their respective ages; and if all the children should refuse it, at the valuation, he directed that his executors should sell it. He then proceeded, " And all my estate, or the value thereof, shall be equally divided amongst my ten children, to wit, *Frederick, Christian, John Jacob, Peter, John David, Daniel, Elizabeth* (the wife of *John Moll*), *Anna Maria* (the wife of *Daniel Yunt*), and *Salome* (the wife of *George Yunt*), *and if one or the other of my children should depart this life, then his bequest or legacy shall come to the heirs of his body.*" The testator appointed his son *Frederick,* and his son-in-law *John Moll,* his executors.

On the eighth of *September,* 1820, the said executors were dismissed from their trust, and letters of administration with the will annexed, were issued to *Frederick Newhardt* and *Christian F. Beitel.*

On the fourth of *December,* 1820, *John Moll* was discharged under the insolvent laws, and on the sixth of *February,* 1826, *John J. Krause* his assignee, gave bond, which was approved by the court.

After payment of debts and specified legacies, there remained in the hands of the defendants as administrators of the deceased, from the valuation and proceeds of his lands, in money and securities, the sum of ———— dollars, of which sum the proportion of the cash bequeathed to *Elizabeth Moll* the wife of *John Moll,* was two hundred and sixty-eight dollars and seventeen cents. From the time letters of administration were granted to *Frederick Newhardt* and *Christian F. Beitel,* the moneys of the estate were paid into the hands of *Christian F. Beitel,* who had the papers of the estate in his charge, or possession, and who yet retained in his hands the said sum of two hundred and sixty-eight dollars and seventeen cents; but he always consulted and confederated with his co-administrator, *Frederick Newhardt,* in relation to all the affairs of the administration. *John Moll* and *Elizabeth* his wife were both in full life at the time the action was brought, and had six children living.

On the 27th of *November,* 1816, *John Moll* and *Frederick Newhardt* executed their joint single bill to *John Biery,* for the payment of one hundred and fifty dollars, on demand, with interest from the date. *Frederick Newhardt* was the surety, and *John Moll* alone

beneficially interested in the said bill. Suit was brought on the said bill, and judgment obtained in the Court of Common Pleas of *Lehigh* county, on the nineteenth of *April*, 1820, for one hundred and sixty-six dollars and fifty-seven cents. On the 2nd of *December*, 1820, *George Yunt* lent to *Frederick Newhardt*, and paid to *Biery* for him, one hundred and seventy-two dollars and seventeen cents, the principal and interest due on the said judgment, of which he took an assignment; the costs, amounting to eight dollars, were also advanced to him by *Yunt*. At the same time, as an additional security to *Yunt* for his advancement, *Newhardt* pledged to him a bond given by *John Jacob Newhardt* to *Frederick Newhardt* and *John Moll*, executors of *Lorentz Newhardt* deceased, dated *July* 31, 1820, in the penalty of two hundred pounds, conditioned for the payment of one hundred pounds on the 15th of *August* then next, being money belonging to the estate of the said *Lorentz Newhardt*, which bond was received by the said *Frederick Newhardt* from the said *Christian F. Beitel*, one of the administrators with the will annexed of the deceased, as part of the legacy bequeathed by the deceased to the said *Frederick Newhardt*, and came into the hands of *Beitel*, as one of the administrators with the will annexed of the deceased.

In the month of *March* or *April*, 1821, *Yunt* purchased the said *Frederick Newhardt*'s plantation in *South Whitehall* township, for fourteen hundred dollars; six hundred payable down, and the residue in payments of one hundred dollars each; and on the 4th of *June*, 1821, *Yunt* re-assigned to *Frederick Newhardt*, the said bond, as and for one hundred and eighty dollars cash, and it was accepted by *Newhardt* as so much on account of the first payment. Afterwards *Yunt* received, as agent of *Newhardt*, from *John Jacob Newhardt*, several sums of money, amounting together to one hundred and ninety-six dollars and eighty cents, for which receipts were endorsed on the bond. The money thus received was paid over by *Yunt* to *Newhardt*, as he received it. The sum of sixteen dollars and forty cents was afterwards, *viz.* on the 7th of *February*, 1824, received by *Frederick Newhardt* himself from *John Jacob Newhardt*.

On the 8th of *August*, 1820, *Frederick Newhardt* endorsed for the accommodation of *John Moll*, his promissory note of that date for one hundred and seventy dollars, payable sixty days after date to the order of the said *Frederick Newhardt* at the *Northampton* Bank, which was discounted at the said bank, and the proceeds carried to the credit of the said *John Moll*. On the 10th of *October*, 1820, the said note was protested for non-payment. Suit was brought upon it by the bank, who on the 5th of *January*, 1821, obtained a judgment against the said *Frederick Newhardt*, who on the 16th *March*, 1826, paid one hundred and fifteen dollars and twenty-eight cents to the cashier of the bank on account of the judgment.

The said sum of one hundred and eighty dollars and seventeen cents, with interest from the 2d of *December*, 1820, and the said sum of one hundred and fifteen dollars and twenty-eight cents, with in-

terest from 16th *March*, 1826, were still due to the said *Frederick Newhardt*, and were claimed to be set off against the plaintiff's demand.

The question for the opinion of the court below was, whether in a suit by the trustee against the administrators with the will annexed, to recover the legacy bequeathed by the testator to the wife of the insolvent, the matters stated in the case as having taken place between *John Moll*, the insolvent, and *Frederick Newhardt*, one of the defendants, formed a set off or equitable defence in favour of the defendants.

The court was of opinion, " that the liabilities contracted by *Frederick Newhardt*, before the assignment by *John Moll* to the plaintiff according to the case, having been discharged by the said *Frederick Newhardt*, before this action was brought, do, for the amount of moneys so paid by the said *Frederick Newhardt* for and on account of the said *John Moll*, furnish an equitable defence in this action according to the repeated decisions of the courts in *Pennsylvania.* And the court, therefore, upon the whole of the case stated, give judgment in favour of the defendants, each party to pay their own costs."

The following errors were assigned in this court :—

*First.* The court erred in giving judgment, on the case stated, in favour of the. defendants.

*Second.* The court erred in deciding, " that the liabilities contracted by *Frederick Newhardt* before the assignment by *John Moll* to the plaintiff, according to the case, having been discharged by *Frederick Newhardt* before this action was brought, did for the amount of moneys so paid by the said *Frederick Newhardt* for and on account of the said *John Moll*, furnish an equitable defence to this action."

*Third.* The court should have given judgment for the plaintiff on the case stated, for the following, among other reasons:

1. That by the assignment executed by *John Moll* on the 4th day of *December*, *A. D.* 1820, the time when he was discharged under the insolvent laws, the right of *John Mott* to the legacy in question was divested from him, and vested immediately in his trustee.

2. That in order to constitute the subject of a set-off or defalcation under the 5th section of the act of 26th *March*, 1814, entitled " *An Act for the relief of Insolvent Debtors*," there must have been mutual subsisting *debts* at the time of the discharge, upon which a recovery could then have been had.

3. That inasmuch as *Frederick Newhardt* was merely surety for *John Moll* to third persons for the matters stated in the case, which liabilities had not been discharged at the time of *John Moll's* dischage as an insolvent debtor, but for which *Moll* was then liable to the original creditor, *Frederick Newhardt* had no subsisting debt against *Moll* at the time of the discharge, and therefore has no debt to defalcate.

4. That as between a debtor of an insolvent and the trustee under

(Krause *v.* Beitel and others.)

the insolvent laws, *mutual credit*, which alone existed in this case, is not the subject of defalcation in *Pennsylvania.*

5. That if *any* debt actually existed in favour of *Frederick Newhardt* against *John Moll* at the time of the assignment and discharge of *Moll*, it was a contingent debt, which is not the subject of defalcation in *Pennsylvania.*

6. That in an action against two to recover a debt jointly due by them, a separate demand due to one of them cannot be set off.

*Brooke*, for the plaintiff in error, cited *Act of 20th March*, 1814, sec. 4, 5. *Purd. Dig.* 389. *Lessee of Willis* v. *Row*, 3, *Yeates*, 520. *Kennedy* v. *Ferris*, 5 *Serg. & Rawle*, 397. *Wickersham* v. *Nicholson*, 14 *Serg. & Rawle*, 118. *Babbington on Set-off*, 116, 117, 118. *Lighty* v. *Brenner*, 14 *Serg. & Rawle*, 132.　17 *Johns. Rep.* 113.　*Perry* v. *Boileau*, 10 *Serg. & Rawle*, 208. *Frost* v. *Carter*, 1 *Johns. Ca.* 73. 6 *Johns. Ch. Rep.* 286. *Buel* v. *Gordon*, 6 *Johns. Rep.* 126. *Stat.* 4 and 5 *Ann.* c. 17.　*Stat.* 2 *Geo.* 2. c. 22.　3 *Bl. Com.* 154. *Marks & al.* v. *Barker & al.* 1 *Wash. C. C. Rep.* 178. *Steigleman* v. *Jeffries*, 1 *Serg. & Rawle*, 477.　*Heck* v. *Shner*, 4 *Serg. & Rawle*, 249. *Shaw* v. *Badger*, 12 *Serg. & Rawle*, 275.　*Light* v. *Stoever's Ex'ors*. 12 *Serg. & Rawle*, 431.

*J. M. Porter*, for the defendants in error, combatted the positions taken by the counsel for the plaintiff in error, and contended further, that by the will of *Lorentz Newhardt*, the legacy given to his daughter, was for her sole and separate use, and that no interest in it vested in her husband *John Moll*, which he was capable of passing to his trustee under the insolvent laws. He cited *Lodge* v. *Hamilton*, 2 *Serg. & Rawle*, 49. *Ingraham on Insolvency*, 223, 227, 228. *Jamison* v. *Brady*, 6 *Serg. & Rawle*, 466. *Torbert* v. *Trvining*, 1 *Yeates*, 432. *King* v. *Deihl*, 9 *Serg. & Rawle*, 409. *Scott* v. *Pine*, 2 *Serg. & Rawle*, 59.　*Deihl* v. *King*, 6 *Serg & Rawle*, 31.　*Bitzer's Ex'or.* v. *Hahn & Wife*, 6 *Serg. & Rawle*, 238.　*Mifflin* v. *Neal*, 6 *Serg. & Rawle*, 460. *Ferree* v. *Commonwealth*, 8 *Serg. & Rawle*, 315.

The opinion of the court was delivered by

Gibson, C. J.—Nothing in the will indicates an intent to limit the bequest in favour of *Elizabeth Moll*, to her separate use.　The limitation to her heirs in case of her death was probably inserted to prevent the legacy from lapsing; but it is manifest from its being used also in reference to the testator's sons, that it was not intended to control the marital rights of the husbands of his daughters.

The remaining point I take to be equally clear.　As regards cross demands, the trustee of an insolvent estate, stands in a situation perhaps less, but certainly not more, favourable than that of any other assignee; his interest in the insolvent's debts being exactly that of the insolvent himself as it stood affected by countervailing equities at the time of the assignment.　The creditors are not purchasers in the first instance, and the trustee takes for their benefit, consequently

(Krause *v.* Beitel and others.)

subject to all the rights which may grow out of the original transaction. It is immaterial, therefore, whether the liability set up as a defence were originally absolute or contingent, the relations of the parties being unalterable by the accidental insolvency of one of them. Here one of the defendants had actually paid a debt for the insolvent before his discharge, and was sued for another, which he has been compelled to pay since, and it conflicts with no provision of the legislature to allow the defendants the benefit of these payments, not perhaps as a set-off, but as a defence, that would be made available by a chancellor; as was held in *Frantz* v. *Brown*, (1 *Penn. Rep.* 261,) without the aid of any statutory provision whatever. We do not perceive, therefore, that the court below erred in doing substantially the same thing in an action at law.

Judgment affirmed.