## Potter *against* Burd.

A defendant, who is sued as administrator, cannot acquire, by purchase or otherwise, a claim against the plaintiff, and defalk it from his demand.  Debts which may be set off must be such as are due in the same right.

When a witness is interested in either event of a trial, and the preponderance cannot be weighed, it goes to his credit, and not to his competency.

ERROR to the common pleas of *Cumberland* county.

Joseph Burd and William Burd were the administrators of John M'Gregor deceased; and as such, on the 16th day of May 1821, in the orphan's court of Cumberland county, settled their account, on which there was found to be a balance in their hands of 6986 dollars 37 cents, subject to distribution according to law ; a certificate of which, under the act of assembly, was filed on the 18th day of October 1832, in the common pleas of Cumberland county.  This *scire facias*, under the act of assembly, issued in favour of Robert Potter, administrator of Agnes Potter deceased, who was one of three heirs and distributees of the said John M'Gregor deceased, to which the defendants pleaded payment, with leave, &c., to which the plaintiff replied *non solvit*. . At the trial the plaintiff gave in evi-

[Potter v. Burd.]

dence the administration account of defendants, as administrators of John M'Gregor deceased, and the record of suit entered on the certificate of the balance of said account.

The defendants, in support of the issue on their part, then gave in evidence several receipts of payments on account of Agnes Potter, plaintiff's intestate's share. Defendants then offered to prove, that on the 25th day of February 1817 Robert Potter, in right of his wife Agnes Potter, took, at the valuation in the orphan's court of the county of Somerset, the real estate of which said John M'Gregor died seised, and entered into a recognizance, with John Dennison and Alexander Hewline as his sureties, in the sum of 8256 dollars, conditioned to pay Rose Conner or Rose M'Gregor and Alexander M'Gregor respectively, their distributive shares of the same value. That the said Robert Potter and wife entered into possession of the said real estate and occupied the same, receiving the rents, issues and profits thereof, up to the death of the said Agnes ; and since her death the said Robert has continued to occupy, and still doth occupy, the same. That the said real estate is now worth but 5 dollars per acre, and is wholly insufficient to pay the distributive shares of the said Rose and Alexander, which are a lien upon it. That the said Robert is insolvent, and that the said John Dennison died insolvent, and that the said Alexander Hewline is not able to pay 1000 dollars. That pending the suits by Samuel M'Gregor and others, brought by them as the heirs of John M'Gregor deceased, C. B. Penrose became concerned through William J. Duane, Esq. as the counsel on behalf of Rose Conner and Alexander M'Gregor, to defend against said Samuel and others in said suits. That after the termination of said suits, at the request of the parties in interest, he, the said Penrose, became administrator with the will annexed of the said Alexander M'Gregor, and also of the said Rose Conner. He was also authorized by Mr Black of the city of Philadelphia, under a power of attorney from the parties in interest, to act for them. That the said C. B. Penrose, before the bringing of this suit, gave Mr Burd notice not to pay any more money to Potter, as he and his wife had received out of the real and personal estate of John M'Gregor more than their distributive shares of said estate ; and he agreed with Mr Burd that he should have the said recognizances to be used as a set-off or equitable defence to any suit which the plaintiff might bring ; and the said Penrose transferred the same to him for this purpose by parol, and for the benefit of the parties in interest. This evidence was objected to. 1st. Because the matters referred to in said offer are not the subject of set-off in this suit : the claims are not in the same right. 2d. There is no authority shown, or offered to be shown, justifying any such arrangement by Mr Penrose with Mr Burd; there is no authority by, nor are the papers referred to from, any of the heirs to make such an arrangement as that proposed to be proved.

Objections overruled, and the evidence admitted ; to which admission, exception was taken by plaintiff.

[Potter v. Burd.]

The recognizances were then read, and evidence given of the value of the land and the insolvency of the recognizees.

C. B. Penrose, Esq. sworn.　"I met Mr Black in Philadelphia, in May or June 1832 : I had before that time corresponded with another person on the subject : I stated to Mr Black the information I had obtained in reference to the estate of John M'Gregor : I suggested to him that Mr Potter, or he and wife, were making a claim on the estate of Mr Burd, of one-third of the personal estate, and that I had received information that they had taken the estate at the appraisement in the western country; and if they succeeded, *the other distributees would be injuriously affected.* I told him that I had given notice to Mr Burd to withhold payment.　Mr Black then authorized me to make the arrangement with Mr Burd to set up a defence on behalf of those heirs, and with a right to vest in Mr Burd, for this purpose, the recognizances which he probably entered into at the time of the appraisement.　After my return home, in the summer of 1832, before this suit was brought, I saw Mr Burd in Carlisle : *I had received then a copy of those recognizances from* Somerset : I repeated the notice not to pay the claim of Potter out of the personal estate, and that it would be just and right for him to defend against the claim, on the ground of Potter having received, by previous payments, and out of the real estate, more than he was entitled to.　Mr Burd agreed it would be just that such a defence should be made : I agreed with Mr Burd that he should have the use of those recognizances for the purpose of making a defence against any suit to be brought for any further sum out of the personal estate, and assigned to him these recognizances for that purpose : he agreed to accept the assignment : I cannot remember the words, but the substance was, that he was to make the defence, and accept the assignment for the purpose ; he to account to the other heirs for whatever amount should be used in defending against the claim of Potter. It was not understood that Mr Burd should account to the other heirs, unless the defence should succeed.　It was an arrangement made to effect this defence : I had given notice a good while before this, to Mr Burd, not to pay any more to Potter."　Cross examined. "There was no money or other consideration by Mr Burd for the assignment, than what has been stated by me.　If upon these recognizances Mr Burd succeeded in his defence, he will have to account to the other heirs *pro tanto.*　This was our understanding."

It is now objected, that in the event of the success of this defence Mr Penrose becomes interested : he will be entitled to receive the sum in controversy as administrator of the other heirs, and it is therefore asked to exclude his testimony.　The objection is overruled by the court, on the ground that Mr Penrose has no personal interest in this suit, or in the result of it, and exception taken by the plaintiff.

The plaintiff's counsel requested the court to charge the jury, that the testimony of Mr Penrose should be rejected, because of the interest of the witness discovered by the testimony given; and that the

IV.——C

evidence when given, with all the other evidence in the cause, would not avail the defendant, either as a set-off or equitable defence.   But the court was of opinion that the defence was available, and so instructed the jury, who found a verdict accordingly.

*Watts*, for plaintiff in error, argued the same question here, and cited, *Amb. R.* 407;   *Prec. in Chan.* 580 ;  2 *Bro. Chan.* 17 ; Murray *v.* Toland, 3 *Johns. Chan.* 574 ; Dale *v.* Cook, 4 *Johns. Chan.* 11 ; 1 *Ves.* 375.

*Penrose* and *Carothers*, for defendant in error, cited, France *v.* Brown, 1 *Penns. Rep.* 257;  Hawk *v.* Geddis, 16 *Serg. & Rawle* 28; Funk *v.* Voneida, 11 *Serg. & Rawle* 117.

The opinion of the Court was delivered by         ·
SERGEANT, J.—With every disposition to sustain the rights of defalcation and set-off, as calculated to prevent multiplicity of suits, and to do justice between parties, care must be taken not to lose sight of all rules and forms of proceeding, and thereby produce uncertainty and confusion.   Our defalcation act of 1705 is a just and liberal one :  its provisions are sufficiently broad to enable the courts to effect every desirable object ; but it does not enable a defendant who is sued as administrator to acquire by purchase or otherwise, a claim against the plaintiff, and defalk that from the plaintiff's demand.   In Darrach's Executors *v.* Hay's Administrators, 2 *Yeates* 208, the defendant's administrator purchased from the holder a check drawn by the plaintiff's testator, and attempted to set it off against the plaintiff's claim on the defendant's intestate ; but it was not allowed.   The court said it could not be declared on as a debt due to the intestate, and could not be pleaded as such in this suit.   It became the private debt of the administrators.   It was clearly settled that the debts which can be set off must be such as are due in the same right.   If the defendants, who are now sued as the administrators of M'Gregor, had obtained an absolute assignment of the recognizance given by the plaintiff to secure the payment of money to Rose Conner and Alexander M'Gregor, it would have been a private debt of their own, due to them in a different right from that for which they were sued, and therefore not a subject of set-off or defalcation in this suit; but the defendants have in fact obtained no legal or equitable assignment of the recognizance ; they paid no consideration for it, nor could they do so as administrators: they could not acquire it as assets, nor part with the money of the estate in such a traffic.   The transaction is stated to be, that Mr Penrose, who was administrator of Alexander M'Gregor and also of Rose Conner, acting under authority from their heirs, gave notice to one of the defendants not to pay the plaintiff, and agreed with that defendant that he should have the use of this recognizance for the purpose of making a defence, and verbally assigned it to him for this purpose only;

the defendant to account with the owners of the recognizance for whatever amount he should succeed in defalking from the plaintiff's demand. So that the case is of an authority or power given by the creditors to the defendant to set off the debt in this suit: if he succeeded, to account to them for so much; if not, the recognizance to remain the property of the recognizees. It would be carrying the doctrine of set-off a great deal further than it has yet been, if the defendant, without acquiring a right in the debt due by the plaintiff, could thus, under a power from the plaintiff's creditor, defeat the present claim on the ground that the plaintiff owed that creditor a sum of money. The rights and claims of third persons, not parties to the suit, cannot be tried in this way, under a mere power to the defendant. There ought at least to have been some definite transfer, otherwise the defendant acts only as the agent or servant of another. In Wolf *v.* Beales, 6 *Serg. & Rawle* 244, in a suit on a bond given by the defendant W. to the plaintiff B., W. was not allowed to set off a bond previously given by B. and another to J. P., conditioned to pay a sum of money to J. P. for the use of E. B., the defendant not having the legal right to the bond (not being given to assignees), and the equitable property being in another, viz. E. B. So here, the defendant has no legal assignment of the recognizance, but a mere authority to use it, and the equitable right is in others. It is true it is sufficient for a set-off, when debts are in the same right, that the defendant is either legal or equitable assignee; Murray *v.* Williamson, 3 *Binn.* 135: but he must be one or the other; not a mere agent or trustee authorized to collect the money or use the chose in action for the benefit of third persons.

It is conceived by the court below, that there was such an equity in the defendant's claim, that chancery would enjoin the plaintiff from recovering in this suit: that the real and personal estate formed one fund, of which the plaintiff had received his one-third, and therefore he ought to recover no more; that he and his sureties were insolvent, and the land much depreciated in value, so that the security of the two other heirs was likely to prove insufficient. But I know of no rule by which a court of equity would enjoin a plaintiff from recovering his debt because he had not paid, or is presumed to be unable to pay a debt due by him to third persons. It would strip him of the very means of paying his debts. Nor can I perceive how the proceeds of the real and personal estate can be said to have constituted one common fund, of which the plaintiff has already received his third or more. The plaintiff did not receive the land as heir, executor or trustee, he took two-thirds as purchaser; the remaining one-third was taken in the right of his wife, who was one of the heirs, and it remained hers, not bound by the recognizance. The land was taken in 1817, and it is said it is now much depreciated; but whether by the fault of the plaintiff, or by the fall of real estate generally, does not appear. If the latter is the cause, the equity of the plaintiff is equal to that of the recognizees, though in law he

[Potter v. Burd.]

would be bound to pay the full amount of the purchase money. The equity of the wife and her representatives is in no respect inferior to that of the other heirs; the land retained by her has equally depreciated in the hands of her representatives: her children would in equity be entitled to support from it after the death of the husband; and if the other heirs are to be compensated for their loss by recurring to the personal fund, the children would also be entitled to a compensation out of it. How are these respective equities to be adjusted? As to the rents and profits, if the plaintiff has received them, it must have been by the laches of the recognizee in not proceeding to sell the land for the debt and interest. There is no equity in these creditors lying by for years, and then urging against the plaintiff the depreciation of the land, and his receipt of the rents: nor in the recognizees abandoning the land, which was the main security, and, on vague evidence of its value, and of the insolvency of the plaintiff and his sureties, seeking indemnification out of a fund never contemplated by any party when the land was taken at the valuation. The recognizees stand in no different relation from any other creditor to whom a debt has been incurred on the strength of securities which may prove doubtful or insufficient: they cannot, on that ground, prevent the plaintiff from recovering his lawful debt; nor would equity interpose to prevent him. If such an interposition is countenanced on behalf of one creditor, a second or a third may claim it, and who shall settle their respective equities? What court can unravel the intricacies of such complex litigation, or afterwards ascertain what has been decided?

The only other error contended for, or sufficiently set out in the record, is, the admission by the court below of Mr Penrose as a witness for the defendant. Mr Penrose states in his evidence, that the agreement he made with the defendants was, that the defendants, if the defalcation succeeded, were to account to the heirs. If so, he was not to receive it as administrator, and had no interest in it. If he were entitled to receive it as administrator, and therefore had an interest in the commissions in case of success, he would also, in case of failure in the defence, have a claim on the recognizance: so that he is interested in either event, and it is impossible to weigh the preponderance on one side or the other: that goes to the credit of a witness.

Judgment reversed, and a *venire facias de novo* awarded.