[ PHILADELPHIA, JANUARY 11TH, 1840. ]

## ROMIG *against* ERDMAN.

### IN ERROR.

A., having a fund in his hands as an executor, the interest of which was payable to the
widow of the testator during her life, and the principal to be divided among the children
of the testator after her death, became bound, in 1816, in a bond as surety for B., one of
the children. In 1821, B. assigned his share of the fund to C. for a valuable considera-
tion, and shortly afterwards became insolvent. In 1824, A. paid the amount of the bond to
the obligee. In 1838 the widow died : *Held*, that A. had a right to avail himself of the
payment of the bond as an equitable defence against the claim of C. as assignee of the
legacy ; and that this right was not affected by the statute of limitations.

THIS was a writ of error to the Court of Common Pleas of Lehigh
County.

Jacob Erdman brought an action in that Court against John
Romig ; in which a case was stated for the opinion of the Court,
setting forth the following facts : .

On the 17th of April, 1797, Adam Romig made his last will and
testament, which was proved on the 2d of October, 1798, and con-
tained, among other provisions, the following:

(Romig *v.* Erdman.)

" And I do hereby order and direct that my executors hereinafter to be mentioned, do take and set apart out of and from my estate the sum of three hundred pounds, lawful money of Pennsylvania, and put the same out on lawful interest, on good security, and do pay the interest thereof yearly and every year to my wife Elizabeth during all the term and time of her natural life," &c. And on her death he directed that this sum should form part of the residue of his estate, which he divided among his children, in certain proportions; and he appointed Adam Romig and John Romig executors. After the probate of the will, by a family arrangement the interest of the additional sum of twelve hundred dollars was given to the widow, in lieu of certain other provisions made for her in the will; which sum, together with the eight hundred dollars mentioned in the will, were set apart for the use of the widow for life, and at her decease, to be distributed agreeably to the directions of the will.

The testator left fourteen children, seven sons and seven daughters, surviving him. Jacob, one of the sons, died unmarried and in his minority. On the 24th of July, 1838, the widow of the testator died. Adam Romig, one of the executors, has been dead several years, and his estate is insolvent.

John Romig, the other executor, yet survives, and has in his hands fourteen hundred and sixty-six dollars and sixty-seven cents of the two thousand dollars set apart for the use of the widow, to be distributed to those legally entitled to the same, under the will. On the 21st of February, 1821, Jacob Erdman, the plaintiff, obtained from Daniel Romig, one of the sons of the testator, the following assignment, under seal. " Know all men by these presents, that I, Daniel Romig, of Durham township, in the county of Bucks, in the commonwealth of Pennsylvania, miller, for and in consideration of the sum of one hundred and twenty-seven dollars and sixty-five cents, lawful money of the United States, to me in hand paid by Jacob Erdman, of Upper Saucon township, in the county of Lehigh, and in the commonwealth of Pennsylvania, at and before the ensealing and delivery hereof, the receipt whereof is hereby acknowledged, have sold, assigned, transferred and set over and by these presents do sell, assign, transfer and set over unto the said Jacob Erdman, his executors and administrators, all such sum and sums of money, shares or portions, legacies and bequests as are given and bequeathed, to me, or by any ways or means coming to me, after the decease of my mother, Elizabeth Romig, agreeably to the last will and testament of my father, Adam Romig, late of Upper Saucon township, then in the county of Northampton, and now in the county of Lehigh aforesaid, miller, deceased. To have and to hold the same to him, the said Jacob Erdman, his executors, administrators and assigns, to his and their own proper use and behoof forever," &c., &c.

(Romig *v.* Erdman.)

Under this assignment the plaintiff claims the share of the said Daniel Romig in the said sum of fourteen hundred and sixty-six dollars and sixty-seven cents.

The payment of the share of Daniel Romig to the plaintiff is resisted by the said John Romig, because, on the 27th of November, 1816, he became bound in a bond with Daniel Romig to one Jacob Werst for the debt of the said Daniel, in the penalty of one hundred and thirty-two dollars and forty cents, conditioned for the payment of sixty-six dollars and twenty cents, in one year, with interest.

By different endorsements on the said bond, the interest appears to have been paid up to November 27th, 1822: there are besides the following endorsements.

"1823. August 23. Received from John Romig on this bond the sum of fifty dollars. (Signed)          JACOB WERST."

"Received, June 15th, 1822, of John Fackenthal, one of the assignees of Daniel Romig, twelve dollars and eighty cents on the within bond, it being for the dividend at nineteen cents to the dollar."

"1824. January 16th. I, Jacob Werst, received the backstanding money of the bond from John Romig: so that what I did receive from John Romig on the bond and interest make the sum of sixty-seven dollars and twenty-three cents received by me.—$67 23.
(Signed)          JACOB WERST."

If under the foregoing facts the said Jacob Erdman is entitled to receive the share of the said Daniel Romig, then judgment to be entered for the plaintiff, the amount to be ascertained by the parties; otherwise for the defendants. All the papers referred to are made part of the case.

The facts to be considered in the nature of a special verdict; either party being entitled to take out a writ of error."

After argument, the Court of Common Pleas gave judgment upon this case in favour of the plaintiff. The following is the substance of the opinion pronounced by Judge BANKS, on the 9th of May, 1839.

"The liability of the defendant is as executor of Adam Romig. The claim he wishes to defalk is not against his testator, but against Daniel Romig. It could not be declared on as the debt of his testator, and cannot be pleaded as such in this suit. It is the private debt of the defendant, who is executor. According to the authority of the case of *Potter* v. *Burd*, (4 *Watts*, 18,) the defendant's claim cannot be used as a defence to the plaintiff's claim. That case lays down the broad principle that an administrator cannot acquire a right by purchase or otherwise to a claim against a person who has

(Romig v. Erdman.)

a debt against the estate he represents, and use it as a set-off. This would apply to executors. That case rules the present. There are other points in the case equally decisive against the defendant, in my opinion. The authority cited however is sufficient."

This writ of error was then taken by the defendant; and on the return of the record the following errors were assigned.

" 1. The Court erred in not giving judgment for the defendant.

2. The Court erred in considering the liability of the defendant to be as executor of Adam Romig ; whereas the case shows that it was a personal liability to Daniel Romig for a legacy bequeathed to him by the said Adam Romig; and the counter claim of John Romig against the said Daniel Romig should have been allowed, either, by way of defalcation, or as an equitable defence.

3. The assignment of the legacy to the plaintiff below was not in the way of the defence, because there was no notice to the defendant below of such assignment before he had paid off the bond, and because the liability for Daniel Romig was incurred by John Romig long before the assignment to the plaintiff below, of the legacy."

Mr. *T. I. Wharton*, for the plaintiff in error argued—

1. That the debt due by Daniel Romig, the legatee, to the defendant, was not barred by the statute of limitations; and cited upon this point, *Dorsheimer* v. *Bucher*, (7 *Serg. & Rawle*, 9.) *Greiner's Estate*, (2 *Watts*, 416.) *Cole* v. *Saxby*, (3 *Esp. Rep.* 160.) *Robinson* v. *Wilson*, (2 *Madd. Ch. Rep.* 435.) *Parson* v. *Priddock*, (2 *Vern.* 608.)

2. That the defendant had a right to set off the amount of this debt against the claim of the plaintiff, or to avail himself of it as an equitable defence. *Wolf* v. *Beates*, (6 *Serg. & Rawle*, 244.) *Waln* v. *Hewes*, (5 *Serg. & Rawle*, 469.) *Stewart* v. *Coulter*, (12 *Serg. & Rawle*, 447.) *Lewis* v. *Culbertson*, (11 *Serg. & Rawle*, 48.) *Morrow* v. *Brenizer*, (2 *Rawle*, 185.) *Bixler* v. *Kunkle*, (17 *Serg. & Rawle*, 298.) *Foulk* v. *Brown*, (2 *Watts*, 213.) *M'Culloh* v. *Sample*, (1 *Penn. Rep.* 424.) *Kline* v. *Guthart*, (2 *Penn. Rep.* 494.) *Masterson* v. *Masterson*, (5 *Rawle*, 137.) *Krause* v. *Beitel*, (3 *Rawle*, 199.) *Frantz* v. *Brown*, (1 *Penn. Rep.* 257.) *Dobson* v. *Lockhart*, (5 *Term Rep.* 133.)

Mr. *Brooke*, for the defendant in error—

1. The bond in which the defendant below was surety became due in 1817, and must be presumed to have been paid in 1837. The remedy of the surety is by an action of *assumpsit ;* and he cannot stand in the shoes of the obligee as a specialty creditor. *Walter* v. *Walter*, (1 *Wharton's Rep.* 299.)

2. Debts cannot be set off, unless due in the same right. *Darrach*

(Romig *v.* Erdman.)

v. *Hay*, (2 *Yeates*, 208.) The case of *Potter* v. *Burd*, (4 *Watts*, 15,) is in point, and conclusive.

The opinion of the Court was delivered by

SERGEANT, J.—The principle determined in *Darrach's Executors* v. *Hay*, and in *Potter* v. *Burd*, (4 *Watts*, 15,) that an executor or administrator cannot purchase in a claim against the estate he represents, and set it off in a suit against him for a claim upon his testator or intestate, is certainly a correct one; but the present case does not seem to be one in which it is applicable. The executor here has not purchased in any outstanding claim by a third person against the estate, which he now attempts to set off against the legacy demanded. The ground he takes is, that while the money bequeathed was in his hands, *debitum in præsenti,* to the legatee though *solvendum in futuro,* he, at the instance of the legatee himself, became his surety in a bond to a third person, which bond he subsequently paid as such surety; the time of becoming surety being previous to the assignment by the legatee to the plaintiff, though the payment was subsequent. And the question is, whether this is not such an equitable payment as enables him to defalk the amount from the legacy demanded; not, in the words of Chief Justice GIBSON, in *Krause* v. *Beitel*, (3 *Rawle*, 204,) as a set-off, but as a defence that would be made available by a chancellor. And I am of opinion that it is. In *Krause* v. *Beitel*, exactly the same thing was done. One of the defendants had paid a debt for the insolvent before his discharge, and was sued for another debt which he afterwards was compelled to pay; and in a suit by the insolvent's assignees he was allowed to defalk them. In *Baughman* v. *Divler*, (3 *Yeates*, 9,) a legatee purchased goods of the executors, and afterwards assigned his legacy; and they insisted on retaining the amount of the sale, against the assignee; and it was held that if credit was given him on that ground, and was so understood, the amount of the goods would be an actual payment *pro tanto.* A surety is more favoured in equity than a vendor. A surety is considered as having a right to all securities and means of payment in the power of his principal; and it would be presumed that the executor became surety on the faith of money in his hands, and is therefore entitled to retain it against the legatee himself, or one taking it by assignment from him; for such person takes it as an ordinary chose in action, not negotiable, and therefore liable to all equities existing at the time of the assignment. I am therefore of opinion that the Court below erred in holding that the defendant's claim as surety could not be admitted as evidence of a defence that might be available in the suit.

But the plaintiff has objected here, that even if the defendant's payments are admissible as a defalcation, yet his claim is barred by the statute of limitations, because they were made more than six

years before the institution of this suit. It is however answered, and I think satisfactorily, that the defendant claims by way of retainer, as executor, of moneys in his own hands, which he might apply to the payment of himself at the time the transaction occurred, without being under the necessity of instituting a suit against the legatee for money paid and expended to his use as surety in the bond. This application he would not be compellable to make; but he certainly might elect to do it; and in the absence of evidence to the contrary, the defendant ought to be considered as having done so, if he insists on it, at the first opportunity presented of making his election.

> Judgment reversed, and judgment for the defendant, on the case stated.